Filed 4/25/13

# IN THE SUPREME COURT OF CALIFORNIA

JOHN W. McWILLIAMS,                )
                                   )
    Plaintiff and Appellant,       )
                                   )                   S202037
    v.                             )
                                   )             Ct.App. 2/3 B200831
CITY OF LONG BEACH,                )
                                   )              Los Angeles County
    Defendant and Respondent.      )        Super. Ct. No. BC361469
_____)

Code of Civil Procedure section 313 provides that the "general procedure" for the presentation of claims for money or damages against a local government entity is prescribed by the Government Claims Act (Gov. Code, § 810 et seq.). In *Ardon v. City of Los Angeles* (2011) 52 Cal.4th 241, 251 (*Ardon*), we held that the Government Claims Act permits a class action claim by taxpayers against a local government entity for the refund of an unlawful tax "in the absence of a specific tax refund procedure set forth in an applicable governing claims statute." In the case now before us, the defendant local government entity asserts that its municipal code contains an "applicable governing claims statute" barring class action claims for a tax refund. We find that a local ordinance is not a "statute" within the meaning of the Government Claims Act and therefore affirm the Court of Appeal.

## BACKGROUND

The current dispute arises out of a class action lawsuit filed in November 2006 by plaintiff John W. McWilliams, a resident of defendant City of Long

1

Beach (the City), filed on behalf of himself and similarly situated individuals challenging the City's telephone users tax (TUT) and seeking refund of the taxes paid. McWilliams asserts that Long Beach Municipal Code section 3.68.50, subdivision (d) exempted from the TUT all amounts that "are exempt from or not subject to" the federal excise tax on telephone service and that the City has for some time mischaracterized the charges subject to the federal excise tax.

The particulars of the mischaracterization are not at issue in this proceeding. It is enough for our purposes to relate that the Internal Revenue Service, following several adverse court decisions, announced in 2006 that it would cease collecting the federal excise tax on long distance and bundled services and allow federal taxpayers to obtain a refund by checking a box on their federal tax returns. In August 2006, McWilliams served a demand on the City and its officers to refund the money he asserted that the City had improperly collected on certain telephone services "during the prior two years." The City did not respond. Instead, in September 2006, the City Council amended its TUT ordinance to remove any reference to the federal excise tax—but did so without seeking the approval of the voters under article XIII C of the California Constitution, commonly known as Proposition 218. The complaint alleges that the City unlawfully collected and continues to collect the TUT "on services that have been conclusively determined to be non-taxable under the Federal Excise Tax."[1]

The class action complaint asserted six causes of action: (1) declaratory and injunctive relief challenging the collection of the TUT; (2) declaratory and

---

[1] In November 2008, after the complaint was filed, voters in Long Beach approved Measure G, which allowed the City to apply its tax to all charges for intrastate, interstate, and international telephone communication services. McWilliams does not challenge in this proceeding the collection of the TUT as authorized by Measure G.

injunctive relief challenging the City Council's amendment to the TUT ordinance; (3) money had and received; (4) unjust enrichment; (5) a violation of due process because of the City's failure to provide either a pre-deprivation or post-deprivation remedy; and (6) a writ of mandate requiring the City to provide a pre-deprivation or post-deprivation remedy. The City demurred to the complaint, arguing (among other things) that Long Beach Municipal Code sections 3.48.060 and 3.68.160 disallow class claims for a refund. The trial court ruled that class claims for a refund were barred under *Woosley v. State of California* (1992) 3 Cal.4th 758, and sustained the demurrer with leave to amend. When McWilliams stated he would not be amending his complaint, the trial court entered an order dismissing the case.

The Court of Appeal stayed the appeal for three years pending this court's resolution of *Ardon*. In *Ardon*, we explained that *Woosley v. State of California*, *supra*, 3 Cal.4th 758, had not erected a categorical bar to class claims for a tax refund: "All that *Woosley* demands is that a court first examine the claims statutes at issue in a claim for a taxpayer refund to determine whether the Legislature contemplated a class claim under the applicable California code." (*Ardon*, *supra*, 52 Cal.4th at p. 251.) *Woosley* did not analyze the applicability of Government Code section 910.[2] *Ardon*, on the other hand, did address the applicability of section 910 and held that class claims for tax refunds against a local governmental entity are permissible under section 910 "in the absence of a specific tax refund procedure set forth in an applicable governing claims statute." (*Ardon*, *supra*, 52 Cal.4th at p. 253.)

After lifting the stay, the Court of Appeal held that "[t]he City is not authorized under the Government Claims Act to establish its own claims

---

[2] Further statutory references are to the Government Code unless otherwise noted.

3

procedure for TUT refunds" and that "McWilliams can file a class claim for a TUT refund" under *Ardon*, *supra*, 52 Cal.4th 241. Accordingly, the Court of Appeal reversed the trial court's order with respect to the first, second, third, and fourth causes of action.

We granted the City's petition for review to decide (1) whether the exception to the Government Claims Act for "[c]laims under . . . [a] statute prescribing procedures for the refund . . . of any tax" in section 905, subdivision (a), excludes local charter provisions and ordinances prescribing procedures for a tax refund; (2) if so, whether the application of the Government Claims Act to local tax refund claims violates the home rule taxing power of charter cities; and (3) whether article XIII, section 32 of the California Constitution requires that a tax refund proceeding be expressly authorized by the legislative body of the local government entity.

## DISCUSSION

The Government Claims Act (Act) "established a standardized procedure for bringing claims against local governmental entities." (*Ardon*, *supra*, 52 Cal.4th at p. 246; see Stats. 1959, ch. 1724, § 1, p. 4133, enacting former § 700 et seq.; now § 900 et seq.) The purpose of the Act "is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 455.) On August 11, 2006, prior to filing this class action, McWilliams served a demand on the City in the form of a letter on behalf of himself and all similarly situated taxpayers seeking a refund of the TUT. The question in this appeal is whether McWilliams was entitled to present this claim on behalf of the entire class or, instead, whether each member of the putative class must present an individual claim prior to filing suit.

4

According to the Act, "all claims for money or damages against local public entities" are to be presented "in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910)," except as provided in section 905.  (§ 905.)  One of the exceptions in section 905 is for "[c]laims under the Revenue and Taxation Code or other statute prescribing procedures for the refund . . . of any tax . . . or any portion thereof . . . ."  (§ 905, subd. (a).)  When a claim is excepted from the Act by section 905 and is "not governed by any other statutes or regulations expressly relating thereto," the claim "shall be governed by the procedure prescribed in any charter, ordinance or regulation adopted by the local public entity."  (§ 935, subd. (a).)

We discussed the operation of these provisions in *Ardon*.  The claim in *Ardon*, like the claim here, involved a class action lawsuit for refund of a TUT, but (unlike the City here) the defendant City of Los Angeles did not identify any municipal ordinance that prescribed procedures for a refund of the tax.  (*Ardon*, *supra*, 52 Cal.4th at p. 246, fn. 2.)  *Ardon* held that claims for tax refunds against a local governmental entity, including class claims, are permitted by section 910 "in the absence of a specific tax refund procedure set forth in an applicable governing claims statute."  (*Ardon*, *supra*, 52 Cal.4th at p. 253.)  Because Ardon's particular claim "did not involve any applicable municipal code or statute governing claims for refunds" (*id*. at p. 251), we did not decide whether a local charter provision or municipal ordinance could qualify as a "statute prescribing procedures for the refund . . . of any tax" within the meaning of section 905, subdivision (a).  (See *Ardon*, *supra*, 52 Cal.4th at p. 246, fn. 2.)

In this case, the City contends that class actions seeking refunds of its local taxes are excepted from the Act by Long Beach Municipal Code sections

5

3.48.060[3] and 3.68.160,[4] which assertedly bar class actions for refunds. Whether the claim here is excepted from the Act thus depends on whether it is a "[c]laim[] under . . . [a] *statute* prescribing procedures for the refund . . . of any tax . . . ." (§ 905, subd. (a), italics added.) The City argues that an ordinance qualifies as a

---

[3]    Long Beach Municipal Code section 3.48.060 provides:

"The refund may be made to the person who paid the money under any of the following conditions:

"A.  If the amount paid is one thousand dollars ($1,000.00) or less and if the department head to which the money was paid authorizes the refund in accordance with prior written authorization of and subject to conditions imposed by the city manager;

"B.  If the amount paid is ten thousand dollars ($10,000.00) or less and if the department head to which the money was paid, with the approval of the city attorney, authorizes the refund; provided, however, that refunds of one thousand dollars ($1,000.00) or less made in accordance with the provisions of Subsection A. of this section shall not require the approval of the city attorney;

"C.  If the amount paid is more than ten thousand dollars ($10,000.00) and the department head to which the money was paid, with the approval of the city attorney and the city council, authorizes the refund."

[4]    Long Beach Municipal Code section 3.68.160 provides:

"A. Whenever the amount of any tax has been overpaid or paid more than once or has been erroneously or illegally collected or received by the city clerk or city treasurer-city tax collector under this chapter, it may be refunded as provided in this section.

"B.  A service supplier may claim a refund or take as credit against taxes collected and remitted the amount overpaid, paid more than once, or erroneously or illegally collected or received, when it is established in a manner prescribed by the city treasurer-city tax collector that the service user from whom the tax has been collected did not owe the tax; provided, however, that neither a refund nor a credit shall be allowed unless the amount of the tax so collected has either been refunded to the service user or credited to charges subsequently payable by the service user to the person required to collect and remit.

"C.  No refund shall be paid under the provisions of this section unless the claimant established his or her right thereto by written records showing entitlement thereto.

"D.  No refund shall be paid under the provisions of this section unless the claimant has submitted a claim pursuant to this section."

"statute" within the meaning of section 905, subdivision (a). McWilliams, on the other hand, contends that the word "statute" in this provision is limited to laws enacted by the Legislature, Congress, or the People.

The Legislature has provided definitions of many of the terms in the Act, including "statute." These definitions govern the construction of the Act "[u]nless the provision or context otherwise requires." (§ 810.) We therefore turn to section 811.8, which defines a "statute" as "an act adopted by the Legislature of this State or by the Congress of the United States, or a statewide initiative act." This definition, as the City concedes, excludes local charters and ordinances. (Cf. *Societa per Azioni de Navigazione Italia v. City of Los Angeles* (1982) 31 Cal.3d 446, 463 [provision of the Act limiting immunity of a public entity to that "provided by statute" (§ 815) "does not include local ordinances or regulations"].) The City, though, contends that the "context otherwise requires" a more expansive definition of the term "statute" as used in section 905, subdivision (a)—one that would encompass local legislation. We disagree.

When the Legislature intended a broader scope than the statutory definition of "statute" in section 905, it used broader language. Subdivision (b) of section 905, for example, excepts from the Act "[c]laims in connection with which the filing of a notice of lien, statement of claim, or stop notice is required *under any law* relating to liens of mechanics, laborers, or materialmen," and subdivision (e) excepts "claims for any form of public assistance under the Welfare and Institutions Code *or other provisions of law* relating to public assistance programs." (Italics added.) Had the Legislature similarly intended to except a broader range of claims in subdivision (a), one assumes it would have used one of these formulations. (Cf. *Zalkind v. Ceradyne, Inc.* (2011) 194 Cal.App.4th 1010, 1035 ["When the Legislature intends the word 'complaint' to include 'cross-complaint,' it says so."].)

7

Moreover, other parts of the Act reveal that the Legislature understood the terms "statute," ordinance," and "charter" to mean different things. For example, section 935, subdivision (a) provides that claims against a local entity for money or damages "which are excepted by Section 905 . . . and which are not governed by any other statutes or regulations expressly relating thereto, shall be governed by the procedure prescribed in any charter, ordinance, or regulation adopted by the local public entity." Having used these terms for their distinct meanings in one part of Act, it is unlikely the Legislature intended "statute" to encompass all three meanings in section 905, subdivision (a).

Furthermore, interpreting the word "statute" in accordance with the statutory definition does not render the term meaningless or inoperative in section 905, nor does it lead to absurd consequences. A number of "other statutes," outside the Revenue and Taxation Code, prescribe the procedures for the refund of a local "tax, assessment, fee, or charge." (Gov. Code, § 905, subd. (a); see, e.g., Bus. & Prof. Code, § 5499.14; Elec. Code, § 13307, subd. (c); Gov. Code, §§ 66001, subds. (d), (e), 66020; Health & Saf. Code, § 5472; Mil. & Vet. Code, § 890.3, subd. (b)(2).) It is therefore reasonable to interpret the exemption for "[c]laims under the Revenue and Taxation Code or other statute prescribing procedures for the refund . . . of any tax, assessment, fee, or charge" (Gov. Code, § 905, subd. (a)) to encompass only those claims that arise under the Revenue and Taxation Code or any other *statute* providing for a refund. Accordingly, neither "the provision or context otherwise requires" a broader definition of the word "statute." (See Gov. Code, § 810.)

The existence of these other statutes distinguishes the word "statute" in section 905, subdivision (a) from the word "regulation" in section 935, subdivision (a). *That* section provides that claims for money or damages against a local public entity that are excepted by section 905, and that are not governed expressly by any

8

other statutes or regulations, "shall be governed by the procedure prescribed in any charter, ordinance or *regulation* adopted by the local public entity" (§ 935, subd. (a), italics added)—even though the Act's definition of "regulation" encompasses *only* regulations promulgated by a state or federal agency. (§ 811.6.) In that circumstance, where the word "regulation" would otherwise be inoperative (but see *Johnson v. San Diego Unified School Dist.* (1990) 217 Cal.App.3d 692, 699 ["Although a school district constitutes a 'state agency' . . . it is a 'local public entity' under the claim-filing requirements of the Act . . . ."]), the context may require a definition other than the statutory definition. (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715-716.) But that is not the situation with the word "statute" in section 905, subdivision (a).

The case law on which the City relies is similarly distinguishable. In those cases, the Court of Appeal determined that the statutory definition of a given term "is superseded when it *obviously conflicts* with the Legislature's subsequent use of the term in a different statute." (*Diamond View Limited v. Herz* (1986) 180 Cal.App.3d 612, 618, italics added; see also *Boy Scouts of America National Foundation v. Superior Court* (2012) 206 Cal.App.4th 428, 446 [holding that the word "person" in Code Civ. Proc., § 340.1, subd. (a)(1) should not be interpreted to include a corporate entity notwithstanding Code Civ. Proc., § 17, subd. (a); because subdivision (a)(2) and (a)(3) refer to liability "against any person or entity," reliance on the statutory definition "would require us to insert the word 'entity' in section 340.1, subdivision (a)(1)" or "ignore the word 'entity' in subdivision (a)(2) and (3)"]; *Watershed Enforcers v. Department of Water Resources* (2010) 185 Cal.App.4th 969, 980 [in determining whether the Department was a "person" within the meaning of Fish & G. Code, § 2080 notwithstanding Fish & G. Code, § 67, the court relied on the fact that other parts of the state Endangered Species Act "emphasize[d]" the Act's application to

9

public agencies, including a provision exempting public agencies from Fish & G. Code, § 2080 in certain circumstances; "It is illogical to expressly exempt an entity from a prohibition that did not apply to it in the first place"]; *American Liberty Bail Bonds, Inc. v. Garamendi* (2006) 141 Cal.App.4th 1044, 1054 [provision allowing the Insurance Commissioner to suspend the license of a "subject person" from employment or participating in the conduct of the business necessarily applied only to natural persons notwithstanding Ins. Code, § 19; "otherwise the subdivision does not make sense"].)  Interpreting "statute" in Government Code section 905, subdivision (a) in accordance with the statutory definition, by contrast, does not present an equivalent conundrum.

The absence of ambiguity in the statutory language dispenses with the need to review the legislative history.  (*People v. Albillar* (2010) 51 Cal.4th 47, 56.) We note, however, that the legislative history does not support the City's contention that the Legislature intended to preserve plenary control by local governments over the procedures for local tax refunds.  (See *Volkswagen Pacific, Inc. v. City of Los Angeles* (1972) 7 Cal.3d 48, 62 [" 'statute' does not refer to ordinance . . . unless the context of section 905, subdivision (a), 'otherwise requires.'  There is nothing in the legislative history to suggest that 'statute' within section 905, subdivision (a), is to have a special meaning unique to that section."].)

"As originally proposed, the standardized procedures of the Act embodied in Government Code section 910 would not have applied to '[c]laims under the Revenue and Taxation Code or other *provisions of law* prescribing procedures for the refund . . . of any tax . . . .' " (*Ardon*, *supra*, 52 Cal.4th at p. 247, quoting Recommendation and Study relating to The Presentation of Claims Against Public Entities (Jan. 1959) 2 Cal. Law Revision Com. Rep. (1959) p. A-12 (1959 Study).) The Law Revision Commission reasoned that for tax refund claims, as with claims

10

required by the mechanics' and materialmen's lien laws and claims for aid under public assistance programs, "the basic objectives of early investigation to prevent litigation and discourage false claims which support a uniform procedure for tort and inverse condemnation claims are not applicable; and orderly administration of the substantive policies governing the enumerated types of claims strongly suggests that claims procedure should be closely and directly integrated into such substantive policies. Obvious and compelling reasons appear for gearing tax refund claims to assessment, levy and collection dates and procedures; establishing special modes for protecting mechanics and material suppliers on public projects; [and] providing an uncomplicated routine procedure for processing the tremendous volume of salary, pension, workmen's compensation and public assistance claims . . . ." (1959 Study, *supra*, 2 Cal. Law Revision Com. Rep., at p. A-117.)

Had the Legislature actually enacted the version proposed by the Law Revision Commission, we could conclude that charters and ordinances concerning refunds of local taxes clearly fall within the category of " '[c]laims under the Revenue and Taxation Code or other *provisions of law* prescribing procedures for the refund . . . of any tax . . . .' " (*Ardon*, *supra*, 52 Cal.4th at p. 247.) But as we recently observed in *Ardon*, *supra*, 52 Cal.4th at page 247, "the Legislature specifically rejected this proposal and instead enacted former section 703, subdivision (a) (now § 905, subd. (a)), which exempted from section 910 '[c]laims under the Revenue and Taxation Code or other *statute* prescribing procedures for the refund . . . of any tax . . . .' (Stats. 1959, ch. 1724, § 1, pp. 4133-4134, italics added.)" The significance of the Legislature's rejection of the commission's proposed language concerning tax refund claims is accentuated by the fact the Legislature, in other subdivisions of former section 703, enacted verbatim the commission's language concerning claims relating to mechanics' liens as well as

11

the commission's language concerning claims relating to public assistance. (Compare 1959 Study, *supra*, 2 Cal. Law Revision Com. Rep. at p. A-12 with Stats. 1959, ch. 1724, § 1, p. 4134.)  That the Legislature retained the commission's language concerning "any provision of law" or "other provisions of law" in those two subdivisions (Stats. 1959, ch. 1724, § 1, p. 4134) but deleted equivalent language in the subdivision concerning local tax refunds is probative of the Legislature's intent with respect to claims involving refund of local taxes. (See *California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 17 [" '[t]he rejection by the Legislature of a specific provision contained in an act as originally introduced is most persuasive to the conclusion that the act should not be construed to include the omitted provision' "].)

The City asserts that the change in language between the Commission's recommendation and the actual statutory text is of no concern in that, at the time former section 703 was enacted, contemporary understanding of the word "statute" encompassed local charters and ordinances.  (See *People v. Cruz* (1996) 13 Cal.4th 764, 775 ["The words of a statute are to be interpreted in the sense in which they would have been understood at the time of the enactment"].)  As proof of this contemporary understanding, the City relies on an observation by Professor Van Alstyne in the accompanying Study Relating to the Presentation of Claims Against Public Entities:  "There seems to be no adequate generic word for referring collectively to statutes, city charters and ordinances.  Since claims are governed by legal requirements of all three types, the phrases 'claims statutes' and 'claims provisions' are used interchangeably herein to refer to all forms of legal claim presentation requirements as a class."  (1959 Study, *supra*, 2 Cal. Law Revision Com. at p. A-18.)  But even if we assume that this represented the common understanding of the phrases "claims statutes" and "claims provisions" in 1959, those phrases appear nowhere in the Law Revision Commission's

12

recommended statutory text, nor do they appear in the Act as enacted in 1959 or in its current form. Moreover, Professor Van Alstyne's contention that no generic word existed to encompass statutes, city charters, and ordinances is belied by the Legislature's use of the word "enactment" in various statutory provisions in existence at that time. (See, e.g., Civ. Code, § 1630; Gov. Code, § 22000; cf. Gov. Code, § 810.6 [" 'Enactment' means a constitutional provision, statute, charter provision, ordinance or regulation"].) As we observed in *Volkswagen Pacific, Inc. v. City of Los Angeles*, *supra*, 7 Cal.3d at page 62, "It would appear that if the Legislature intended to except all tax refund actions, rather than just those arising under state law, it would have used 'enactment' rather than 'statute.' " We therefore do not find Professor Van Alstyne's specification of the meaning of "claims statute" persuasive as to the meaning of "statute" in Government Code former section 703 or in present section 905.

For the same reasons, we are not persuaded by the City's reliance on a smattering of cases from the 1950's, all from a single panel of Division One of the First Appellate District, that used "claims statute" or "claim statute" to encompass San Francisco claiming ordinances. (See *Parodi v. City & County of San Francisco* (1958) 160 Cal.App.2d 577, 580; *Cruise v. City & County of San Francisco* (1951) 101 Cal.App.2d 558, 562; *Germ v. City & County of San Francisco* (1950) 99 Cal.App.2d 404, 414.)

When considered in light of the legislative history, the case law is not supportive of the City's construction of section 905, subdivision (a), either. The City relies on *Pasadena Hotel Development Venture v. City of Pasadena* (1981) 119 Cal.App.3d 412 (*Pasadena Hotel*), which declared that section 905, subdivision (a) excepted *all* claims for the refund of a local tax, and on *Batt v. City and County of San Francisco* (2007) 155 Cal.App.4th 65 (*Batt*), which relied on *Pasadena Hotel*. But *Pasadena Hotel* was based explicitly on an erroneous

13

premise.  The Court of Appeal there asserted that the reference in section 905, subdivision (a) to claims for a tax refund under " 'the Revenue and Taxation Code or other statute' is not a limitation upon the type of tax claims excepted from the coverage" of the Act, in that "the Law Revision Commission ha[d] stated that it excluded from the scope of the unified claims statute then proposed by the Commission all 'claims for tax exemption, cancellation or refund' " and this subdivision was "enacted in the form proposed by the commission," such that "the intent of the commission in regard to [its] meaning may be deemed to be the intent of the Legislature."  (*Pasadena Hotel*, *supra*, 119 Cal.App.3d at p. 415, fn. 3.)  The *Pasadena Hotel* Court was mistaken.  As demonstrated above, the Legislature did *not* codify the language proposed by the commission with respect to claims for tax refunds; rather, the Legislature narrowed its scope by substituting "other statute" for "other provisions of law."  Moreover, not only did the *Pasadena Hotel* court ignore the Legislature's modification, it never mentioned the presumptively applicable definition of "statute" set forth in section 811.8.

  *Batt*, in a rather brief analysis, rejected the taxpayer's argument that *Pasadena Hotel* was wrongly decided and dismissed as "dictum" our observation in *Volkswagen Pacific, Inc. v. City of Los Angeles*, *supra*, 7 Cal.3d at page 62, that " '[i]t would appear that if the Legislature intended to except tax refund actions, rather than just those arising under state law, it would have used "enactment" rather than "statute." ' "  (*Batt*, *supra*, 155 Cal.App.4th at p. 83 & fn. 10.)  However, *Batt,* too, failed to acknowledge the Legislature's modification of the Law Revision Commission's proposed language concerning tax refunds as well as the definition of "statute" set forth in section 811.8.  *Batt* did cite two cases that enforced local ordinances governing tax refund actions, *Flying Dutchman Park, Inc. v. City and County of San Francisco* (2001) 93 Cal.App.4th 1129 and *Howard Jarvis Taxpayers Ass'n v. City of Los Angeles* (2000) 79 Cal.App.4th 242, but

14

neither case ever considered the argument that the Act applied.  Indeed, neither one even cited sections 811.8, 905, or 910.  " 'It is axiomatic that cases are not authority for propositions not considered.' " (*In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388.)

By contrast, *County of Los Angeles v. Superior Court* (*Oronoz*) (2008) 159 Cal.App.4th 353 considered the definition of "statute" set forth in section 811.8 as well as the views expressed on that issue in *Volkswagen Pacific, Inc. v. City of Los Angeles*, *supra*, 7 Cal.3d 48, and concluded that a county ordinance "is not a 'statute' within the meaning of Government Code section 905, subdivision (a) and therefore does not invoke section 905, subdivision (a)." (*Oronoz*, *supra*, 159 Cal.App.4th at p. 361.)  For the reasons stated above, we agree with *Oronoz*.  Our review of the text and legislative history confirms that the applicable definition of "statute" in section 905, subdivision (a) is that set forth in section 811.8, which excludes local charter provisions and ordinances.  We therefore disapprove *Pasadena Hotel Development Venture v. City of Pasadena*, *supra*, 119 Cal.App.3d 412, and *Batt v. City and County of San Francisco*, *supra*, 155 Cal.App.4th 65, to the extent they are inconsistent with this conclusion.

The City briefly presents two constitutional arguments in support of local control over tax refunds notwithstanding the scope of section 905, subdivision (a), but neither has merit.

According to the City, charter cities have constitutional authority to "make and enforce all ordinances and regulations in respect to municipal affairs" (Cal. Const., art. XI, § 5, subd. (a)), even against inconsistent state laws.  The power to levy local taxes in support of local expenditures, of course, is a "municipal affair." (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1991) 54 Cal.3d 1, 13.)  Yet, as the City acknowledges, the California Constitution also provides that "[t]he Legislature may prescribe procedure for presentation, consideration, and

15

enforcement of claims against counties, cities, their officers, agents, or employees." (Cal. Const., art. XI, § 12.) Section 910 is one such provision, but the Legislature has set forth other procedures to govern even those local tax refund actions excepted from section 910, including claims relating to the refund of property taxes (Rev. & Tax. Code, §§ 5097, 5140), sales taxes (Rev. & Tax Code, §§ 6932, 6933), and other assessments (e.g., Bus. & Prof. Code, § 5499.14). (See also *Volkswagen Pacific, Inc. v. City of Los Angeles*, *supra*, 7 Cal.3d at p. 62 & fn. 7.) The City urges us, almost in passing, to declare a conflict between these two constitutional provisions and to favor the home rule power, because "[t]o rule otherwise is to eviscerate the taxing power our Constitution confers on charter cities." But the City's proposal ignores our duty to harmonize constitutional provisions where possible. (*City and County of San Francisco v. County of San Mateo* (1995) 10 Cal.4th 554, 563.) A review of the history of these constitutional provisions reveals that no conflict exists.

The predecessor version of article XI, section 12 of the California Constitution stated that "[n]o provision of *this article* shall limit the power of the Legislature to prescribe procedures governing the presentation, consideration and enforcement of claims against chartered counties, chartered cities and counties, and chartered cities or against officers, agents and employees thereof." (Cal. Const., art. XI, former § 10, as adopted Nov. 8, 1960, italics added.) The home rule power, then as now, was set forth in the same article. (Cal. Const., art. XI, § 5; see art. XI, former §§ 6, 8, 8 1/2, 9.) Thus, under the predecessor provision, it was understood that the home rule power did not limit the power of the Legislature to prescribe procedures governing claims against chartered local governments, such as the City. In 1970, the provision was amended to its current form, but the deletion of the reference to chartered cities, chartered counties, and chartered cities and counties was not intended to change the scope of the Legislature's power with

16

respect to chartered entities. Rather, the intent was to clarify the Legislature's power over "all counties and cities in contrast to existing constitutional provisions which apply only to charter counties and cities." (Minutes, Cal. Const. Revision Com. Meeting of Sept. 14-15, 1967, p. 10; see also Assem. Com. on Const. Amend., Analysis of Art. XI (Feb. 21, 1968) p. 8 [Section 12 "is intended to replace existing Section 10 [citation omitted], without any change in meaning"].) In short, the home rule protections in the Constitution do not limit the Legislature's authority to prescribe procedures governing claims against chartered local government entities.

The City argues next that the second sentence of article XIII, section 32[5] of the California Constitution "means that the relevant Legislature—the Long Beach City Council or the City's people acting via initiative—must expressly authorize the class claim if [McWilliams] is to pursue it." The City's argument is inconsistent with what we said in *Ardon*: "[E]ven assuming article XIII, section 32 is equally applicable to tax actions against local governments, we have already determined that section 910 provides the necessary legislative authorization for class claims of taxpayer refunds against local government entities." (*Ardon*, *supra*, 52 Cal.4th at p. 252.) Indeed, *Ardon* went on to conclude that "neither the explicit language nor the policy underlying article XIII, section 32" barred a class refund action, notwithstanding the absence of a local charter provision or ordinance authorizing class refund actions. (*Ardon*, *supra*, 52 Cal.4th at p. 252.)

---

[5]    Article XIII, section 32 provides: "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature."

17

Finally, we do not believe that the 10 states[6] identified by the City that have barred or limited class actions for tax refunds compel us to create a similar rule here. As *Ardon* makes clear, California has not adopted such a bar—and McWilliams has identified six other states[7] that, like California, allow class action tax refund claims in various circumstances. In any event, the issue here is not whether class actions for tax refunds should be permitted, but which level of government—the state or the local public entity—should define the procedures governing an action for refund of a local tax. We hold that except as to "[c]laims under the Revenue and Taxation Code or other statute prescribing procedures for the refund . . . of any tax," the Legislature has determined that the Government Claims Act applies. (§ 905.)

---

[6]     Georgia (Ga. Code Ann., § 48-2-35(c)(5)), Missouri (*State ex rel. Lohman v. Brown* (Mo.Ct.App. 1997) 936 S.W.2d 607, 610), Nebraska (*Boersma v. Karnes* (Neb. 1988) 417 N.W.2d 341, 344), Pennsylvania (*Dunn v. Board of Property Assessment* (Pa.Commw.Ct. 2005) 877 A.2d 504, 512), South Dakota (*Pourier v. S.D. Dept. of Rev. & Reg.* (S.D. 2010) 778 N.W.2d 602, 605-606), and Tennessee (*Wicker v. Commissioner* (Tenn.Ct.App. 2010) 342 S.W.3d 35, 42-43) do not allow class actions for tax refunds.

Illinois (*Jones v. Department of Revenue* (Ill.App.Ct. 1978) 377 N.E.2d 202, 204), Indiana (*Ziegler v. Ind. Dept. of State Revenue* (Ind.Tax Ct. 2003) 797 N.E.2d 881, 885-889), New York (*Neama v. Town of Babylon* (N.Y.App.Div. 2005) 796 N.Y.S.2d 644, 646) and Washington (*Lacey Nursing Center v. Dept. of Revenue* (Wn. 1995) 905 P.2d 338, 343) require a prior protest or claim by each individual in the class or some other individualized identification of the tax paid and reasons why it should be reduced or abated.

[7]     Arizona (*Ariz. Dept. of Revenue v. Dougherty* (Ariz. 2001) 29 P.3d 862, 864-865), Colorado (*Buckley Powder Co. v. State* (Colo.Ct.App. 2002) 70 P.3d 547, 554-555), Kentucky (*City of Somerset v. Bell* (Ky.Ct.App. 2005) 156 S.W.3d 321, 326-327), Massachusetts (see *American Trucking v. Secretary of Admin.* (Mass. 1993) 613 N.E.2d 95, 105), New Jersey (*American Trucking Ass'n v. Kline* (1986) 8 N.J. Tax 181, 187-189), and North Carolina (*Bailey v. State* (N.C. 1998) 500 S.E.2d 54, 73-76) allow class tax refund actions.

**DISPOSITION**

The judgment of the Court of Appeal is affirmed.

BAXTER, J.

WE CONCUR:

CANTIL-SAKAUYE, C.J.
KENNARD, J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
LIU, J.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** McWilliams v. City of Long Beach

_____

**Unpublished Opinion** XXX NP opn. filed 3/28/12, 2d Dist., Div. 3
**Original Appeal**
**Original Proceeding**
**Review Granted**
**Rehearing Granted**

_____

**Opinion No.** S202037
**Date Filed:** April 25, 2013

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Anthony J. Mohr

_____

**Counsel:**

Wolf Haldenstein Adler Freeman & Herz, Francis M. Gregorek, Rachele R. Rickert, Marisa C. Livesay; Chimicles & Tikellis, Nicholas E. Chimicles, Timothy N. Mathews; Tostrud Law Group, Jon Tostrud; Cuneo Gilbert & Laduca and Sandra W. Cuneo for Plaintiff and Appellant.

Lieff, Cabraser, Heimann & Bernstein, Joy A. Kruse; Lockridge Grindal Nauen, Kate Baxter-Kauf, Elizabeth R. Odette;  and Edward M. Teyssier for Consumer Action, National Association of Shareholder and Consumer Attorneys and Tax Foundation as Amici Curiae on behalf of Plaintiff and Appellant.

Robert E. Shannon, City Attorney, J. Charles Parkin, Assistant City Attorney, Monte H. Machit, Principal Deputy City Attorney; Colantuono & Levin, Michael G. Colantuono, Sandra J. Levin,Tiana J. Murillo and Jon R. Di Christina for Defendant and Respondent.

Dennis J. Herrera, City Attorney (San Francisco), Julie Van Nostern, Chief Tax Attorney, and Peter J. Keith, Deputy City Attorney, for League of California Cities and California State Association of Counties as Amici Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Francis M. Gregorek
Wolf Haldenstein Adler Freeman & Herz
750 B Street, Suite 2770
San Diego, CA 92101
(619) 239-4599

Michael G. Colantuono
Colantuono & Levin
300 S. Grand Ave., Suite 2700
Los Angeles, CA 90071-3137
(213) 542-5700