Filed 3/5/15  P. v. Meza CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRAYAN MARTIN MEZA,<br><br>    Defendant and Appellant. | B250365<br><br>(Los Angeles County<br>Super. Ct. No. MA054914) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Rand S. Rubin, Judge.  Affirmed.

Corona & Peabody, Jennifer Peabody, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Mary Sanchez and Jonathan M. Krauss, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \*

Defendant Brayan Martin Meza (defendant) challenges his 40-year sentence for murder on the grounds that (1) the 25-year firearm enhancement, which was based in part upon a gang enhancement (Penal Code, §§ 12022.53, subds. (d), (e)(1), 186.22, subd. (b)(4))[1], was improperly imposed, and (2) the trial court erred in not granting a third postponement of his sentencing hearing. There is no reversible error, so we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Carlos Sotello (Sotello) picked two fist fights with David Hendricks (Hendricks) in a day, and lost both of them. Sotello walked away after the first, but shot and killed Hendricks after the second. Sotello got the gun he used from defendant. Sotello belonged to the "Down as Fuck" (DAF) street gang, and defendant belonged to the Westside Playboys street gang. The two gangs were allied, and had overlapping members.

The People charged defendant with murder (§ 187), and alleged that the murder was committed for the benefit of, at the direction of, and in association with a criminal street gang (§ 186.22, subd. (b)(4)). The People further (and alternatively) alleged that a principal in the crime (1) personally used a firearm (§§ 12022.53, subds. (b), (e)(1), 186.22, subd. (b)(4)), (2) personally discharged a firearm (§§ 12022.53, subds. (c), (e)(1), 186.22, subd. (b)(4)), and (3) personally used and discharged a firearm causing death (§§ 12022.53, subds. (d), (e)(1), 186.22, subd. (b)(4)). Following trial, a jury convicted defendant of second degree murder under an aiding and abetting theory, and found the gang enhancement as well as all of the firearm enhancements to be true.

Defendant elected to represent himself following the return of the verdict. The court sentenced defendant to 40 years to life in prison—15 years to life on the murder charge, followed by 25 years to life for the enhancement involving discharge of a firearm causing death. The court imposed, but stayed sentences of 20 years and 10 years for the firearm enhancements for discharge and use of a firearm, respectively; the court also stayed any sentence on the gang enhancement.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

Defendant timely appeals.

## DISCUSSION

**I.      Propriety of firearm enhancement based on gang enhancement**

Defendant was sentenced to an additional 25 years to life because Sotello killed Hendricks by intentionally discharging a firearm.  (§ 12022.53, subds. (d), (e)(1); § 186.22, subds. (b)(4), (e)(1).)  This enhancement is usually reserved for the shooter, but can also enhance the sentence of a defendant who was not the shooter if (1) the shooter intentionally discharged a firearm and killed someone, (2) the shooter and the defendant were both "principals" in the commission of the charged crime, and (3) the charged crime was "committed for the benefit of, at the direction of, or in association with *any criminal street gang*, with the specific intent to promote, further, or assist in any criminal conduct by gang members."  (*Ibid.*, italics added; *People v. Salas* (2001) 89 Cal.App.4th 1275, 1281.)

To prove this last element, the People must prove, among other things, a link to a "criminal street gang."  A "criminal street gang" is (1) "any ongoing organization, association or group of three or more persons," (2) "having as one of its primary activities the commission of [certain enumerated] criminal acts," (3) "having a common name or common identifying sign or symbol," and (4) "whose members individually or collectively engage in . . . a *pattern of criminal gang activity*."  (§ 186.22, subd. (f), italics added.)  Gang members engage in a "pattern of criminal gang activity" if (1) two or more gang members commit, attempt to commit, conspire to commit, or solicit the commission of *two or more enumerated criminal offenses*, (2) on separation occasions, but within three years of each other, and (3) one of the offenses was committed after September 23, 1988.  (§ 186.22, subd. (e), italics added.)

In instructing the jury on the "pattern of gang activity" element, the trial court in this case used a modified version of CALCRIM 1401.  In pertinent part, the court instructed:  "A pattern of criminal gang activity, as used here means, 1A. any combination of two or more of the following crimes, or two or more occurrences of one or more of the following crimes: Narcotics Sales, Felon with Firearm, Attempted Murder,

3

Murder, Mayhem. 2. At least one of those crimes was committed after September 26, 1988; 3. The most recent crime occurred within three years of one of the earlier crimes; AND 4. The crimes were committed on separate occasions or were personally committed by two or more persons."

At trial, the People sought to prove that the Westside Playboys qualified as a "criminal street gang."  To prove the "pattern of gang activity" element, the People proffered (1) a minute order and expert testimony indicating that Westside Playboys' member Joe Martinez (Martinez) was charged with, and convicted of, possessing methamphetamine for sale in 2010, and (2) a minute order and expert testimony indicating that Westside Playboys' member Cesar Ramos (Ramos) was charged with attempted murder, mayhem and assault with a deadly weapon in 2010, and subsequently convicted by plea of assault with a deadly weapon.

Defendant contends that the jury's gang enhancement finding—and the firearm enhancement that rests upon it—must be vacated because there was a mismatch between the jury instruction and the proof at trial on the "pattern of gang activity" element. Defendant concedes that Martinez's conviction qualifies as a predicate gang crime, but asserts there was no viable, second predicate crime because (1) Ramos's assault with a deadly weapon conviction cannot be used because "assault with a deadly weapon" was omitted from the jury instruction's list of predicate crimes the jury could consider, and (2) defendant's conviction of murder in this case cannot be used because the jury instruction omitted language informing the jury it could consider that crime as a predicate gang crime.

On appeal, defendant characterizes this challenge both as instructional error and as insufficient evidence to prove the enhancement.  It is uncontested that (1) Ramos was convicted of assault with a deadly weapon and assault with a deadly weapon is a permissible predicate gang crime (§ 186.22, subd. (e)(1)), and (2) defendant's conviction in this case was also a permissible predicate gang crime (§ 186.22, subd. (e)(3)), and can be used to prove the enhancement (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 323).

4

Because defendant is not disputing the quantum of evidence establishing these predicate crimes, his argument is, at bottom, a claim of instructional error.

We need not delve into the error itself because any instructional error is harmless beyond a reasonable doubt. To be sure, we may not engage in harmless error review when a jury instruction omits all or "substantially all of the elements of an offense" or enhancement. (*People v. Cummings* (1993) 4 Cal.4th 1233, 1315.) But the enhancement here is the gang enhancement, and the omission here pertains to the "pattern of gang activity," which is just one part of the "criminal street gang" element of the enhancement. We may consequently evaluate the omissions in this case for harmless error.

When an instruction omits an element, we are to ask: "Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?" (*Neder v. United States* (1999) 527 U.S. 1, 18 (*Neder*).) The answer to this question is "yes" "'where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence.'" (*People v. Mil* (2012) 53 Cal.4th 400, 417, quoting *Neder*, at p.17.) In this case, it was uncontested at trial that Ramos was convicted of assault with a deadly weapon,[2] and it is uncontested on appeal that defendant committed and was convicted of the charged homicide. The omissions were accordingly harmless beyond a reasonable doubt.

Defendant argues that he is entitled to reversal and dismissal of the gang enhancement under *People v. Garcia* (2014) 224 Cal.App.4th 519. We disagree. In pertinent part, *Garcia* ruled that a gang enhancement could not be imposed on the basis of predicate crimes committed by the defendant himself when he was acquitted of those crimes and when the jury was instructed that what was required was a "conviction" of the predicate crime (rather than a "commission"), even though commission is sufficient under the law. *Garcia* is unhelpful because it did not analyze the issue as one of instructional error and thus had no occasion to apply the law governing the harmlessness

---

[2] As a result, defendant's further argument that the instruction is defective because it requires that the predicate crime "occur[]" (rather than be "committed") is of no consequence.

of such errors.  It goes without saying that a case is not authority for propositions it did not consider.  (*McWilliams v. City of Long Beach* (2013) 56 Cal.4th 613, 626.)

## II.    Invalid theory of conviction

In closing argument, the prosecutor made a somewhat muddled and confusing argument regarding the gang enhancement that could be understood as urging the jury to find that DAF—rather than the Westside Playboys—was a "criminal street gang." Defendant argues that this argument amounts to the presentation of a legally invalid theory, which mandates reversal under *People v. Guiton* (1993) 4 Cal.4th 1116, 1128-1129 (*Guiton*).

We disagree for two reasons.  First, what defendant complains of is not a question of *legal* invalidity, but a question of *factual* invalidity.  The jury was instructed on the definition of a "criminal street gang" and the prosecutor's argument was at most an attempt to get the jury to find that DAF fit that definition based on the evidence presented at trial.  Defendant asserts that there was no evidence of any predicate crimes committed by DAF members.  At bottom, defendant is arguing that the prosecutor was presenting an invalid *factual* theory.  Where "the inadequacy of proof is purely factual, of a kind the jury is fully equipped to detect, reversal is not required whenever a valid ground for the verdict remains, absent an affirmative indication in the record that the verdict actually did rest on the inadequate ground." (*Guiton*, *supra*, 4 Cal.4th at p. 1129.)  As we note above, the jury's verdict is valid based on the Westside Playboys' status as a criminal street gang.  Because there is no "affirmative indication" that the jury's gang enhancement finding was based on DAF, *Guiton* does not mandate reversal.

Second, even if we treated this as an issue of legal invalidity, *Guiton* does not mandate reversal when the invalid theory is presented solely through the prosecutor's argument. (*People v. Morales* (2001) 25 Cal.4th 34, 43 (*Morales*).)  That is because the jury, as was the case here, is told that the prosecutor's arguments are not evidence and are to be ignored to the extent they conflict with the court's instructions. (*People v. Williams* (2009) 170 Cal.App.4th 587, 635 [juries are presumed to follow the court's instructions].)

6

The appropriate claim of error, and the one defendant asserts in the alternative, is that the prosecutor engaged in misconduct. (*Morales*, *supra*, 25 Cal.4th at p. 43.) In this case, however, the defendant did not object to the prosecutor's argument and he has accordingly forfeited his right to press any misconduct argument on appeal. (*People v. Brown* (2003) 31 Cal.4th 528, 533.) Defendant tries to sidestep this bar by alleging that his trial counsel was constitutionally ineffective. We reject this argument because, as we explain next, there was no prosecutorial misconduct; counsel is not ineffective for not making a meritless objection. (*People v. Ochoa* (1998) 19 Cal.4th 353, 464 ["Representation does not become deficient for failing to make meritless objections."].)

A prosecutor's conduct transgresses the boundaries of federal due process if """"it infects the trial with such unfairness as to make the conviction a denial of due process,"""" and violates state law """"if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury."""" (*People v. Adams* (2014) 60 Cal.4th 541, 568.) Neither type is present here. The prosecutor's argument was unclear. At worse, the argument implored the jury to find DAF to meet the legal definition of "criminal street gang" when the evidence did not support such a finding. This is not fundamentally unfair or reprehensible. Nor is there any evidence the prosecutor engaged in any deception.

### III.   Continuance of sentencing hearing

Defendant asserted his right to represent himself the day the jury returned its verdicts. On two occasions, the trial court specifically asked the defendant how much time he would need to be ready for sentencing and any posttrial motions; both times, defendant asked for 30 days and both times the trial court granted his request. Defendant argues on appeal that the trial court abused its discretion in not granting him a third postponement, even though defendant had already been given 70 days to prepare for the hearing, defendant had not demonstrated any progress on the matters he sought to present at the hearing, and defendant was granted leeway to present any arguments orally at the hearing. Based on this record, we conclude that the trial court did not abuse its discretion in finding that defendant had not demonstrated "good cause" for a further continuance.

7

(*People v. Alexander* (2010) 49 Cal.4th 846, 934; § 1050, subd. (e) [requiring "good cause" for a continuance].)

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT

We concur:


_____, P. J.

BOREN


_____, J.

ASHMANN-GERST