Filed 4/8/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DONALD SIPPLE et al., | B242893 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC462270) |
| v. | |
| CITY OF HAYWARD et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. William F. Highberger, Judge. Reversed and remanded with directions in part, and affirmed in part.

Morris and Associates, Stephen B. Morris; Bartimus, Frickleton, Robertson & Gorny, James P. Frickleton, Edward D. Robertson, Jr., for Plaintiffs and Appellants Donald Sipple, John Simon, Karl Simonsen and Christopher Jacobs.

Doyle Law, Conal F. Doyle for Plaintiff and Appellant New Cingular Wireless PCS LLC.

Jarvis, Fay, Doporto & Gibson, Benjamin P. Fay, Andrea J. Saltzman, Rick W. Jarvis for Defendants and Respondents City of Hayward, City of Modesto, City of Palo Alto, City of Redwood City, City of San Luis Obispo and City of Santa Barbara.

Colantuono & Levin, Michael G. Colantuono, Holly O. Whatley, Amy C. Sparrow for Defendants and Respondents Alhambra Coalition.

Richards, Watson & Gershon, Lisa Bond, Andrew Brady for Defendants and Respondents Cities of Compton, Hawthorne, Long Beach and Redondo Beach.

Meyers, Nave, Riback, Silver & Wilson, Deborah J. Fox, Peter S. Hayes, Mary C. Tsai for Defendants and Respondents City of Desert Hot Springs, Downey, El Cerrito, Pasadena, Pinole and San Leandro.

Barbara J. Parker, City Attorney, Doryanna Moreno, Chief Assistant City Attorney, William E. Simmons, Kathleen Salem-Boyd, Christopher Kee for Defendant and Respondent City of Oakland.

Dennis J. Herrera, City Attorney, Julie Van Nostern, Chief Tax Attorney, Peter J. Keith, Deputy City Attorney for Defendant and Respondent City and County of San Francisco.

Lagerlof, Senecal, Gosney & Kruse, James D. Ciampa, Jenny Kim for Amici Curiae League of California Cites and California State Association of Counties.

_____

For a number of years, individuals throughout California were improperly charged taxes for internet access by their internet service provider, New Cingular Wireless PCS LLC (New Cingular), prompting various customers to file putative class action lawsuits. The lawsuits eventually settled, with New Cingular agreeing to seek refunds of the taxes from the cities and counties to which the taxes were remitted. After refund claims were denied, New Cingular (and various individual plaintiffs purporting to act on behalf of other customers) brought this action against the cities and counties.

The trial court sustained demurrers without leave to amend, finding, among other things, that New Cingular lacked standing to pursue refund claims against the defendant cities and counties. Because we determine that New Cingular has adequately alleged standing to bring an action for tax refund, we reverse, in part, the trial court's judgment.

## BACKGROUND

Plaintiff and appellant New Cingular, along with plaintiffs and appellants Donald Sipple, John Simon, Karl Simonsen, and Christopher Jacobs (the individual plaintiffs), filed suit for tax refunds against 132 California cities and two California counties. Following the filing of demurrers, and after settlements were reached with a number of cities, appellants filed a first amended complaint (FAC) against 115 California cities and two California counties. The FAC alleged causes of action for: tax refund, unjust enrichment, money had and received, and violation of due process. Demurrers to the FAC were sustained without leave to amend.

**The underlying class litigation**

This lawsuit arose out of the class litigation involving New Cingular. According to the FAC, the Internet Tax Freedom Act, 47 United States Code section 151, imposed a national moratorium on state and local government taxation on internet access. In its monthly bills to customers, New Cingular (an affiliate of AT&T Mobility LLC (AT&T Mobility)) erroneously charged its customers taxes on internet access over a span of several years and remitted those taxes to the defendant cities and counties.

Putative class actions were filed against AT&T Mobility and affiliates in California federal district courts by the individual plaintiffs on behalf of California

3

consumers, alleging that they were improperly charged for internet access taxes that were then remitted to California municipalities. Similar lawsuits were filed in other venues throughout the United States. The cases were ultimately consolidated in a multi-district litigation proceeding in the United States District Court for the Northern District of Illinois.

The multi-district litigation was eventually settled, and, for purposes of the settlement, a series of subclasses, including a California settlement subclass with the individual plaintiffs as representatives, was certified by the District Court for the Northern District of Illinois. In approving the settlement, the district court found that the settlement agreement bound only the parties privy to it (i.e., the class members and AT&T Mobility and its affiliates), and that the agreement did not purport to dictate the effect of any state or local laws. (See *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.* (N.D.Ill. 2011) 789 F.Supp.2d 935, 983.)

Under the terms of the settlement agreement, AT&T Mobility, which was defined as including affiliates such as New Cingular, agreed to process and assist in processing refund claims in the many taxing jurisdictions in which internet taxes were paid, including in the defendant cities and counties. On behalf of the class members, AT&T Mobility was to file claims in jurisdictions in which it had standing to seek refunds of the taxes. The class members expressly authorized AT&T Mobility to file the refund claims. The settlement agreement further provided that in the event a claim was denied, AT&T Mobility would "cooperate in the appeal" and would "retain the right but not the obligation to appeal, otherwise contest, or further prosecute an appeal of any adverse ruling or decision in the event that Settlement Class Counsel declines to do so for any reason." Any refunds granted by the taxing entities were to be paid or transferred to escrow accounts, and eventually paid out of the escrow accounts to individual class members. If taxing entities issued tax credits to AT&T Mobility in lieu of refunds, AT&T Mobility was to make payments in the amount of the credits to the escrow accounts, again for eventual payout to the class members. The settlement agreement imposed no obligation on AT&T Mobility to advance any monies to class members or to

4

make any payments to class members in excess of the refunds and credits received from the taxing jurisdictions.

**The instant lawsuit**

Pursuant to the settlement agreement, New Cingular filed claims for refunds with California cities and counties on behalf of every person who paid the subject taxes in California, except for those few who opted out of the class settlement. The refund claims itemized the specific amount of the tax refund allegedly due each individual by each city or county. One claim form was submitted to each taxing jurisdiction; included with the form was a compact disc showing the names of the subclass members who paid the taxes to the specific jurisdiction, how much they each paid, and other relevant information.

The defendant cities and counties all denied or failed to respond to the refund claims. New Cingular and the individual plaintiffs then brought this lawsuit, seeking to obtain the refunds.

Fifty-five defendants (respondents)[1] filed demurrers to the FAC. Respondents argued, inter alia, that appellants failed to allege facts showing compliance with defendants' tax refund ordinances and failed to establish that they had standing to bring the action.

The trial court sustained respondents' demurrers without leave to amend. It noted that the FAC did not allege that any of the individual plaintiffs paid internet access taxes

---

[1] Respondents are the Cities of Alhambra, Berkeley, Burbank, Calabasas, Chico, Chula Vista, Compton, Culver City, Cupertino, Daly City, Desert Hot Springs, Downey, East Palo Alto, El Cerrito, El Monte, Exeter, Gardena, Gilroy, Glendale, Guadalupe, Hawthorne, Hayward, Huntington Beach, Huntington Park, Long Beach, Los Altos, Los Angeles, Modesto, Montclair, Monterey, Moreno Valley, Mountain View, Oakland, Pacific Grove, Palo Alto, Pasadena, Pinole, Pomona, Porterville, Redondo Beach, Redwood City, Richmond, San Bernardino, San Jose, San Leandro, San Luis Obispo, Santa Barbara, Santa Cruz, Sierra Madre, Stockton, Torrance, Tulare, Waterford, and Winters, and the City and County of San Francisco. Most respondents have attorneys in common with other respondents, and a total of six separate respondents' briefs were filed in this appeal. The largest group of respondents' is the "Alhambra Coalition," which is made up of 37 cities.

5

to any particular taxing jurisdiction, or that any individual plaintiff filed a claim for tax refund. The court found that appellants were "trying to press a de facto class action," and it queried: "Can plaintiffs state a claim to obtain municipal refunds via the litigation efforts of (a) the vendor which collected and remitted the tax and (b) the four sub-class representatives appointed through a separate litigation process in federal court in Chicago to seek refunds for the benefit of the consumer settlement class certified by that court?" The court answered the question, "No," finding "[t]he vendor which collected and remitted the tax . . . does not have standing to seek a refund when it has not incurred any financial loss because it has not yet refunded the amounts in question to its own customers before making the refund claim. At present, [New Cingular] is not out any money for the taxes in question as all amounts remitted to the several municipal jurisdictions were paid in full by the vendor's customers. [Citation.] [New Cingular] simply passed those moneys along to the governments after including such items in error on periodic billings." The trial court also based its decision on its finding that local ordinances which prohibited class claims or required individual claimants to file their own individual claims were effective and not preempted by any state laws.

New Cingular and the individual plaintiffs timely appealed the judgment entered in favor of respondents.

## DISCUSSION

We review the ruling sustaining the demurrers de novo, exercising independent judgment as to whether the complaint states a cause of action as a matter of law. (*Desai v. Farmers Ins. Exchange* (1996) 47 Cal.App.4th 1110, 1115.) We give the complaint a reasonable interpretation, assuming all properly pleaded material facts are true, but not assuming the truth of contentions, deductions or conclusions of law. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.) We may consider matters that are properly judicially noticed. (*Four Star Electric, Inc. v. F & H Construction* (1992) 7 Cal.App.4th 1375, 1379.)

A demurrer tests the legal sufficiency of the complaint. (*Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497.) As such, we are not concerned with the

6

difficulties a plaintiff may have in proving the claims made in the complaint. (*Desai v. Farmers Ins. Exchange*, *supra*, 47 Cal.App.4th at p. 1115.)  We are also unconcerned with the trial court's reasons for sustaining the demurrers, as it is the ruling, not the rationale, that is reviewable. (*Mendoza v. Town of Ross* (2005) 128 Cal.App.4th 625, 631; *Sackett v. Wyatt* (1973) 32 Cal. App.3d 592, 598, fn. 2.)

## I.  The Government Claims Act

Code of Civil Procedure section 313 provides that the "general procedure for the presentation of claims as a prerequisite to commencement of actions for money or damages" against a local government entity is prescribed by the Government Claims Act (Gov. Code, § 810 et seq.[2]).  The Government Claims Act "established a standardized procedure for bringing claims against local government entities." (*Ardon v. City of Los Angeles* (2011) 52 Cal.4th 241, 246 (*Ardon*).)  The purpose of the Government Claims Act "is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 455.)

Section 910 provides the basic framework for presenting a claim.  It states:  "A claim shall be presented by the claimant or by a person acting on his or her behalf and shall show all of the following:  [¶] (a) The name and post office address of the claimant. [¶] (b) The post office address to which the person presenting the claim desires notices to be sent. [¶] (c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted. [¶] (d) A general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim. [¶] (e) The name or names of the public employee or employees causing the injury, damage, or loss, if known. [¶] (f) The amount claimed if it totals less than ten thousand dollars ($10,000) as of the date of presentation of the claim . . . together with the basis of computation of the amount claimed.  If the amount claimed

---

[2]     All further statutory references are to the Government Code, unless otherwise noted.

7

exceeds ten thousand dollars ($10,000), no dollar amount shall be included in the claim. However, it shall indicate whether the claim would be a limited civil case." Section 910 applies to claims against governmental entities generally, including certain claims for tax refunds. (§ 905, subd. (a); *Ardon*, *supra,* 52 Cal.4th at p. 247.)

## II. The effect of local ordinances

The trial court sustained respondents' demurrers, in part, because it found that the claims filed by New Cingular were improper. New Cingular filed a single claim form with each respondent city and county that—along with the compact disc listing the names of subclass members and how much they paid in internet access taxes—contained the general information required by section 910. The trial court found that the claims were invalid because they violated local ordinances that prohibited class claims and that required individual claimants to separately file individual claims.

In April 2013, after the trial court made its ruling, our Supreme Court decided *McWilliams v. City of Long Beach* (2013) 56 Cal.4th 613 (*McWilliams*). Earlier, in *Ardon,* the Supreme Court held that the Government Claims Act permitted a class action claim against a local government entity for refund of an unlawful tax "in the absence of a specific tax refund procedure set forth in an applicable governing claims statute." (52 Cal.4th at p. 251.) The defendant city in *McWilliams* argued that its municipal code contained an "'applicable governing claims statute' barring class action claims for a tax refund." (*McWilliams*, at p. 616.) The *McWilliams* court disagreed, holding that the city's ordinance was not a "statute" and therefore was subject to the general claim requirements of section 910, which permit class claims against a government entity. (*Id.* at pp. 616-617, 619.) The taxpayer plaintiff was thus entitled to present a claim on behalf of the entire class, and each member of the putative class was not required to make an individual claim prior to the filing of the lawsuit, despite what the ordinances purported to prohibit. (*Id.* at pp. 619-620.)

8

On appeal, respondents do not dispute the applicability of *McWilliams*, and acknowledge that class claims are permissible.[3] They argue, however, that the claims at issue here were barred by local ordinances that allow a service supplier, such as New Cingular, to file a claim only in the event that the service supplier has already refunded disputed taxes from its own funds to its customers.

To the extent that these "refund first" ordinances establish a precondition to filing a claim, they are preempted by the Government Claims Act. Section 910 provides that a claim may be presented by "the claimant or by a person acting on his or her behalf." It establishes no requirement that the claim be presented only by an entity that has repaid taxes to its customers. As explained by *McWilliams*, the Legislature mandated that the Government Claims Act apply in matters such as this one involving a claim for refund of a local tax. (56 Cal.4th at pp. 628-629.) Respondents seek to limit the scope of section 910 by allowing a "person" such as New Cingular to file a claim on another's behalf only if it has first complied with an ordinance's "refund first" requirements. Just as the defendant city in *McWilliams* could not impose a limitation barring class claims, respondents here may not impose a "refund first" requirement that circumscribes the class of persons that may bring a claim on another's behalf.[4] Under section 910, New Cingular had standing to present claims to respondents on behalf of its customers who were

---

[3]     Actually, the assertion that New Cingular made a class claim was never quite correct. This case does not involve a "class representative" making a claim on behalf of unnamed similarly situated individuals. Instead, New Cingular filed refund claims on behalf of all the specifically named customers in each defendant city and county, and the information provided with the claims forms detailed pertinent information for each customer, including how much in internet access taxes each paid.

[4]     Appellants reason that the "refund first" ordinances can be harmonized with the Government Claims Act by requiring a refund from the service supplier only when the taxing jurisdiction has determined that a refund is due and has set the amount of the refund, after a claim has been presented and considered. Because this issue is immaterial to whether appellants properly stated a cause of action, we need not reach it.

9

charged the internet access taxes. Local ordinances may not subvert the authority granted by section 910.

Furthermore, we find that New Cingular's claims complied with the claims presentation requirements stated in section 910. Only substantial compliance with all requirements of section 910 is necessary for a claim to be satisfactory (*Ardon*, *supra*, 52 Cal.4th at p. 247), and respondents do not dispute that the claims here contained all pertinent information required by section 910.

## III. Standing

The primary issue that remains is whether New Cingular had standing to file suit for tax refund after the claims were rejected by respondents. Respondents contend that, even if New Cingular had standing to file the claims, it did not have standing to bring suit.

Code of Civil Procedure section 367 provides: "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." Respondents argue that the real parties in interest here are the customers of New Cingular, who were charged for the internet access taxes and stand to recover any refunds. According to respondents, New Cingular suffered no injury because it merely passed through taxes paid by its customers to the respondent cities. Respondents note, and appellants do not dispute, that New Cingular's customers did not make an assignment of claims to New Cingular. Rather, New Cingular characterizes itself as an "agent" authorized by agreement and by federal court order to prosecute its customers' claims for refunds. Respondents further assert that New Cingular may not rely on section 910 to confer standing in a lawsuit. Section 910 is found in Part 3 of the Government Claims Act, pertaining to "Claims Against Public Entities," not in Part 4, which is entitled "Actions Against Public Entities and Public Employees."

Standing is jurisdictional. (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 233; *Chiatello v. City and County of San Francisco* (2010) 189 Cal.App.4th 472, 480.) "Generally, 'the person possessing the right sued upon by reason of the substantive law is the real party in interest.'" (*Del Mar Beach Club Owners Assn.*

*v. Imperial Contracting Co.* (1981) 123 Cal.App.3d 898, 906.) "To have standing, a party must be beneficially interested in the controversy, and have 'some special interest to be served or some particular right to be preserved or protected.' [Citation.] This interest must be concrete and actual, and must not be conjectural or hypothetical. [Citation.]" (*Iglesia Evangelica Latina, Inc. v. Southern Pacific Latin American Dist. of the Assemblies of God* (2009) 173 Cal.App.4th 420, 445.)

A number of cases have examined the issue of whether a business that remits taxes to a local taxing jurisdiction has standing to seek a refund. Respondents place heavy emphasis on one of these cases, *Scol Corp. v. City of Los Angeles* (1970) 12 Cal.App.3d 805 (*Scol*). Scol, a retailer of alcoholic beverages, sought a refund of "tipplers' tax" monies it collected from its customers and remitted to the defendant, claiming that the tax was unconstitutional or otherwise illegal. (*Id.* at p. 808.) The court found that Scol had no standing to sue for itself or on behalf of its customers because it was not a "taxpayer" (its customers were), but it was instead a "tax collector." (*Id.* at .pp. 808-809.)

*Scol* has since been criticized for its sharp distinction between a "taxpayer" and a "tax collector," and its strict rule denying standing in all circumstances to "tax collectors." "To the extent *Scol* stands for the proposition that a party lacks standing to challenge a tax unless it is the denominated 'taxpayer' under the statutory or regulatory scheme imposing the tax, it is outdated." (*TracFone Wireless, Inc. v. County of Los Angeles* (2008) 163 Cal.App.4th 1359, 1364 (*TracFone*).) This is because "[t]here have been some refinements of the rule barring suits for refund to persons not technically regarded as 'taxpayers' . . . resulting from unusual circumstances which have been subject to judicial review." (*Delta Air Lines, Inc. v. State Board of Equalization* (1989) 214 Cal.App.3d 518, 526 (*Delta*).)

The cases presenting these sorts of "unusual circumstances" have been somewhat limited. In *Delta*, the defendant tax board argued that the plaintiff's vendors, not the plaintiff, were required by law to pay the taxes on fuel that the plaintiff purchased, and that because the plaintiff was not the technical taxpayer, it lacked standing to sue for an alleged overpayment of taxes. (214 Cal.App.3d at p. 525.) The Court of Appeal

11

disagreed, finding that the plaintiff had standing to pursue an action for refund because it was legally responsible for the taxes and had actually paid disputed taxes. (*Id.* at p. 529.)

In *Andal v. City of Stockton* (2006) 137 Cal.App.4th 86, 88-89 (*Andal*), three cell phone companies, which were required to collect from customers and remit to the city a fee imposed for the local 911 communication system, sued for declaratory relief, seeking to have the fee declared unconstitutional. The defendant city argued that the companies lacked standing. Relying on *Gowens v. City of Bakersfield* (1960) 179 Cal.App.2d 282, the appellate court found that the companies had standing to file suit because they were required to collect, record, report, and remit the fee, under threat of various penalties, and they were "engaged in competitive businesses that could be adversely affected by the tax on customers." (*Andal*, at p. 94.)

In *TracFone*, the plaintiff paid the defendant County of Los Angeles use taxes from its own funds that it later determined were tax exempt. (163 Cal.App.4th 1359, 1361.) The trial court found that the plaintiff lacked standing to seek a refund because it was the service provider responsible for collecting the tax from the consumer, and thus not the "taxpayer" under the relevant county ordinance. (*Id.* at pp. 1361-1362.) The Court of Appeal reversed, finding that the plaintiff alleged that it had itself paid the taxes and could not recover the taxes from its customers, with whom it had no contact. (*Id.* at p. 1365.) The plaintiff therefore had standing to pursue a refund. (*Id.* at p. 1366.)

The *TracFone* court held that "concerns of fairness require the courts to ensure the taxing authority is not unjustly enriched at the expense of persons left without a remedy." (163 Cal.App.4th at p. 1365.) These principles of fairness and avoidance of unjust enrichment are present in the other decisions finding standing in unusual circumstances. (See *Delta*, *supra*, 214 Cal.App.3d at p. 526 ["there is precedent for judicial intervention in matters involving the [State Board of Equalization] to prevent unjust enrichment, intervention intended to ensure some remedy for persons who have been overtaxed"].) For example, in *Decorative Carpets, Inc. v. State Board of Equalization* (1962) 58 Cal.2d 252, 253 (*Decorative Carpets*), the plaintiff erroneously charged its customers and remitted to the board taxes on sales and installation of carpeting. The plaintiff sued the

12

board, and the trial court found that the plaintiff was entitled to refund because it was the taxpayer under the law. (*Id.* at p. 254.) The trial court, however, disregarded the plaintiff's stated intention to keep the refund for itself rather than pay it back to its customers. (*Id.* at p. 254.) The Supreme Court reversed, finding that that the plaintiff had standing and could recover the refund, but only upon submission of proof that it would return the monies to its customers, holding: "It is still left to the courts to adopt appropriate remedies when excessive reimbursements have been collected by mistake and paid to the state." (*Id*. at p. 256.)

In *Javor v. State Board of Equalization* (1974) 12 Cal.3d 790, again under unusual circumstances, the Supreme Court allowed an automobile purchaser and purported class representative to join the State Board of Equalization as a party to a suit against retailers for recovery of sales taxes paid to the board. (*Id.* at p. 802.) Retailers were the only parties that could obtain refunds under the board's procedures, but they had no incentive to seek refunds because they would be required to return the funds to the purchasers. (*Id.* at p. 801.) In fashioning the remedy of joinder, the court held that the State Board of Equalization could not "use the refund procedure to abdicate its responsibility to the customer, particularly where the Board stands to unjustly profit under such circumstances." (*Id.* at p. 800.)

None of the above cases presents facts closely resembling those of the instant dispute, and the parties have not pointed to any published cases that do. Nevertheless, we believe that the above-expressed concerns of fairness and ensuring that a taxing authority not be unjustly enriched have significant relevance to the appropriate analysis here.

Although the issue of standing is a close one, we find that under the unique circumstances presented by this case, New Cingular has a beneficial interest and is a proper plaintiff. Respondents characterize New Cingular's role as one akin to a lawyer representing a client seeking a tax refund. Under the terms of section 910, the lawyer may file a claim with a local government entity on his client's behalf, but no authority allows the lawyer to then sue for a refund in his own name. This comparison overlooks

New Cingular's direct involvement in the events underlying the claims in this case and the enforceable contractual relationship New Cingular has with its customers.

New Cingular charged improper internet access taxes in its monthly bills to customers and then paid those taxes to the defendant cities and counties. These are the taxes that New Cingular now seeks to recover, for the benefit of its customers. In that respect it is similar to the plaintiff in *Decorative Carpets*, who was allowed to pursue a lawsuit for tax refunds on the condition that the monies be returned to the customers. (58 Cal.2d at p. 256.)

Further, New Cingular has a direct interest in seeking the refunds.[5] New Cingular was sued for charging the internet access taxes, and settled the case by agreeing to seek refunds. By settling the federal litigation, New Cingular avoided potential liability and attorney fees, and its customers authorized it to seek refunds on their behalf.[6] Under the settlement agreement, which is enforceable by United States District Court for the Northern District of Illinois, New Cingular is contractually obligated to seek the refunds.[7] Thus, New Cingular has a concrete and actual interest in seeking the refunds. (See *Iglesia Evangelica Latina, Inc. v. Southern Pacific Latin American Dist. of the*

---

[5] Indeed, respondents' assertion that New Cingular is a disinterested third party is belied by the fact that many respondents have ordinances specifically allowing a service supporter such as New Cingular to file a claim for refund.

[6] Respondents argue that the settlement agreement only authorized New Cingular to file claims, not a lawsuit. We disagree. The settlement agreement generally provides that AT&T Mobility, including New Cingular, shall seek refunds from the taxing jurisdictions and further stipulates that in the event a taxing jurisdiction denies a claim AT&T Mobility shall cooperate in the appeal of the denial. Moreover, the agreement provides that AT&T Mobility retains the right "to appeal, otherwise contest, or further prosecute an appeal of any adverse ruling or decision." We find this language to be a sufficiently clear authorization for AT&T Mobility to prosecute a lawsuit such as this one contesting the denial of claims.

[7] The district court retained jurisdiction to enforce the terms of the settlement agreement. (*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, *supra*, 789 F.Supp.2d 935, 978.)

14

*Assemblies of God*, *supra*, 173 Cal.App.4th at p. 445 [to have beneficial interest, party's interest in controversy must be "concrete and actual"].)

Moreover, because no refunds obtained are to be retained by New Cingular, there is no possibility that New Cingular will be unjustly enriched. The settlement agreement explicitly provides that New Cingular will assign all of its "rights, title and interest" in any refunds received to members of the relevant subclass of customers. On the other hand, if this litigation is not allowed to proceed, the defendant cities and counties will likely keep the improper taxes, leaving them unjustly enriched at the expense of New Cingular's customers. This is a result we should strive to avoid. (See *Decorative Carpets*, *supra*, 58 Cal.2d at p. 256; *TracFone*, *supra*, 163 Cal.App.4th at p. 1365; *Delta*, *supra*, 214 Cal.App.3d at p. 526.) Under the circumstances presented in this case, it is appropriate for the company that collected and remitted the taxes, and that made claims for refunds pursuant to section 910, to seek the refunds on behalf of its customers in court.[8]

Therefore, because New Cingular's allegations are sufficient to confer standing, the trial court erred by sustaining the demurrers against New Cingular. The demurrers were properly sustained against the individual plaintiffs, however, as the FAC contained no allegations detailing the particular cities or counties to which they paid internet access taxes. "'[T]o state a cause of action against a public entity, every fact material to the existence of its statutory liability must be pleaded with particularity.'" (*Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 795.) In the trial court and on appeal, the individual plaintiffs made no attempt to correct this deficiency; thus,

---

[8]     Respondents argue that under the terms of the settlement agreement not all refunded monies will be paid to customers, since some will cover expenses such as attorney and escrow fees. Moreover, respondents assert that the statute of limitations has expired on many potential claims for refunds; customers who paid internet access taxes more recently have more viable claims than those who paid years ago, but the settlement agreement calls for equal apportionment of refunded monies. Respondents' apparent concern for the customers is misplaced. These are the terms the customers consented to in the settlement agreement, and each customer had the right to opt out of the agreement.

15

amendment is not warranted.  (See *Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711 [to be allowed opportunity to amend, plaintiff must demonstrate how the complaint can be amended].)

## IV.  Remaining causes of action

In addition to the cause of action for tax refund, New Cingular also asserted claims for unjust enrichment, money had and received, and violations of due process.  Each of these additional causes of action simply incorporated the allegations upon which the claim for tax refund was based.  Thus, these asserted causes of action are merely duplicative.  Only a single cause of action for tax refund has actually been stated. (*TracFone*, *supra*, 163 Cal.App.4th at p. 1368.)

Therefore, although these additional causes of action stand, they effectively allege only a single cause of action for tax refund.  (*TracFone*, *supra*, 163 Cal.App.4th at p. 1368.)

## DISPOSITION

The judgment in favor of respondents and against New Cingular is reversed and remanded with directions to the trial court to vacate its order sustaining respondents' demurrers as to New Cingular.  In all other respects, the judgment is affirmed.

New Cingular shall recover its costs on appeal.

CERTIFIED FOR PUBLICATION.


                                        BOREN, P.J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.