Filed 3/21/25  Tesoro Refining & Marketing Co. v. City of Carson CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| TESORO REFINING & MARKETING COMPANY LLC et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CITY OF CARSON, <br><br> Defendant and Respondent. | B335686 <br><br> Los Angeles County Super. Ct. No. <br><br> 23STCV14351 <br><br> ORDER MODIFYING OPINION; DENYING PETITION FOR REHEARING; DENYING REQUESTS FOR PUBLICATION <br><br> NO CHANGE IN JUDGMENT |

THE COURT*

The court has received the petition for rehearing filed by appellants on March 17, 2025.  The court's opinion, filed February 28, 2025, is modified to add the following text at the end of footnote 6 on p. 17:  "In its supplemental brief, Tesoro contends the issue of preemption implicates subject matter

jurisdiction and, therefore, arguments based thereon cannot be forfeited by failure to raise them in the trial court. This contention is meritless because the cases on which it is based are inapplicable here. Those cases dealt with forfeiture in the context of whether a state law was preempted by a federal law. None of them addressed whether preemption in the context presented in this case (i.e., preemption of local ordinances by state law) raises questions relating to jurisdiction. (See *County of Amador v. El Dorado County Water Agency* (1999) 76 Cal.App.4th 931, 940, 956 [holding plaintiffs' CEQA challenges to government purchase of a hydroelectric project were not preempted by the Federal Power Act (16 U.S.C. § 791a et seq.)]; *De Tomaso v. Pan American World Airways, Inc.* (1987) 43 Cal.3d 517, 520 [California Supreme Court granted review to "resolve a conflict among the Courts of Appeal as to when state tort claims are preempted by the" Railway Labor Act (45 U.S.C. § 151 et seq.)]; *Haberbush v. Charles & Dorothy Cummins Family Limited Partnership* (2006) 139 Cal.App.4th 1630, 1633, fn. omitted [holding "Code of Civil Procedure section 188 is not preempted by the federal Bankruptcy Code"].)"

 This modification does not change the judgment.

 The petition for rehearing is denied.

 In addition, the court has read and considered the requests for publication filed by respondent on March 10, 2025, and by non-parties Rural County Representatives of California, California State Association of Counties, and League of Cities on March 18, 2025. Rule 8.1105 of the California Rules of Court does not mandate publication of this court's February 28, 2025 opinion. The requests for publication are therefore denied.

2

Pursuant to rule 8.1120(b) of the California Rules of Court, the Clerk is directed to forward to the Clerk of the Supreme Court the requests for publication, the opinion, and this order.

---

\*ZUKIN, Acting P. J.                    COLLINS, J.

Filed 2/28/25  Tesoro Refining & Marketing Co. v. City of Carson CA2/4 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| TESORO REFINING & MARKETING COMPANY LLC et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CITY OF CARSON, <br><br> Defendant and Respondent. | B335686 <br><br> Los Angeles County Super. Ct. No. <br><br> 23STCV14351 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Holly J. Fujie, Judge. Affirmed.

Nielsen Merksamer Parrinello Gross & Leoni, Christopher E. Skinnell, David J. Lazarus; Capitol Law & Policy and Eric J. Miethke for Plaintiffs and Appellants.

Aleshire & Wynder, Sunny K. Soltani, William W. Wynder, Alison S. Flowers and Shukan A. Patel for Defendant and Respondent.

# INTRODUCTION

After satisfying the prefiling conditions in the Government Claims Act (Gov. Code[1], § 810 et seq.) (GCA), Tesoro Refining & Marketing Company LLC and Tesoro Logistics Operations LLC (collectively, Tesoro) sued the City of Carson (the City). The suit sought refund of monies paid to satisfy Tesoro's obligations under the City's Oil Industry Business License Tax (OIBLT) for the period beginning December 2017 and ending June 2018 (the Covered Period). Among other things, the complaint alleged the City's assessment of the amounts paid violates the United States and California Constitutions, as well as various California statutes.

The City demurred to the complaint, arguing it failed to state facts sufficient to constitute a cause of action because it did not allege Tesoro exhausted the administrative remedies set forth in Carson Municipal Code[2] sections 63515 and 63523 (collectively, the Administrative Review Ordinances) before filing suit. Tesoro countered that the Administrative Review Ordinances were void, as they were preempted by the GCA. Therefore, Tesoro argued, it did not have to comply with them as a precondition to filing suit.

Agreeing with the City and rejecting Tesoro's preemption argument, the trial court sustained the demurrer with leave to amend. Subsequently, following this court's denial of its petition

---

1     All further undesignated statutory references are to the Government Code.

2     All further references to the "Municipal Code" are to the Carson Municipal Code.

for writ of mandate, Tesoro declined to amend its complaint. The trial court then entered judgment in the City's favor. We affirm.

## BACKGROUND

In November 2017, the City's voters approved Measure C which adopted the OIBLT, codified in Article VI, Chapter 3.5, of the Municipal Code, sections 63501 through 63526. Measure C became effective on December 1, 2017.

Per Municipal Code section 63502: "The purpose of [the OIBLT] is to impose a business license tax on persons engaged in the business of operating any facility where petroleum or petroleum products are blended, mixed, processed, or refined and/or any facility that stores petroleum products. It is an excise tax on the privilege of doing business in the City . . . ." To accomplish this purpose, Municipal Code section 63505 generally requires "every person engaged in the City in the business of operating an oil refinery or facility that stores petroleum products [to] pay calendar quarterly business license tax of one-quarter (1/4) percent of gross receipts of any such business conducted within the City."

Municipal Code sections 63515 and 63523 describe the procedures by which a taxpayer may obtain a refund of monies paid under the OIBLT. First, Municipal Code section 63515 requires the taxpayer to seek relief from the City's Finance Director (Director), stating: "No tax, penalty or interest shall be refunded unless it is determined by the Director that it has been paid in error, computed incorrectly, overpaid, or collected illegally. No refund shall be made unless a request is received in writing by the Director within one (1) year of the payment of the tax, interest or penalty to be refunded."

3

If the taxpayer is dissatisfied with the Director's decision, Municipal Code section 63523, subdivision (A) provides: "Any person may appeal any decision of the Director made under this Chapter to the City Manager within fifteen (15) days of the decision." To do so, the ordinance requires the taxpayer to file a written appeal with the City Clerk containing the following information: (1) the appellant's name and address; (2) the matter being appealed; and (3) a statement of the grounds of appeal. Municipal Code section 63523, subdivision (C) then describes when and how the City Manager must act upon the appeal, stating: "Within sixty (60) days after the timely filing of an appeal pursuant to this [s]ection, the City Manager or a hearing officer appointed by the City Manager shall allow an opportunity for submission of argument and evidence in writing or orally and then determine whether and to what extent to grant or deny the appeal. A hearing officer's decision shall constitute a recommendation to the City Manager. The City Manager's decision shall be final as to the City, but subject to judicial review pursuant to Code of Civil Procedure section 1094.5."

Tesoro operates an oil refinery and a petroleum product storage facility, both of which are partially located in the City. When the OIBLT took effect in December 2017, Tesoro began submitting timely returns. During the Covered Period, Tesoro calculated its tax due based on the gross receipts for transactions taking place within the City, employing apportionment methodologies it had used in the City of Los Angeles. Tesoro then paid the sums it believed to be due based on these calculations.

Years later, the City audited Tesoro's returns reporting its OIBLT liability and, in April 2022, issued a Notice of Deficiency

4

assessing additional amounts. Tesoro timely paid the balance due under the Notice of Deficiency on May 25, 2022.

On March 13, 2023, Tesoro mailed a claim for damages to the Office of the City Clerk, seeking refund of the OIBLT monies it paid to the City for the Covered Period. The City rejected the claim on April 27, 2023.

On June 21, 2023, Tesoro filed a verified complaint asserting a single cause of action for refund of all monies paid in satisfaction of its OIBLT obligations for the Covered Period. Tesoro alleged that by collecting the amount assessed, the City "improperly seeks to tax business activity that Tesoro undertakes outside" City boundaries in violation of the United States and California Constitutions, as well as multiple California statutes.

The City demurred to the complaint, asserting it fails to state facts sufficient to constitute a cause of action. In so doing, the City argued that, as a precondition to filing suit for refund, taxpayers are required to exhaust the administrative remedies set forth in the Administrative Review Ordinances. Therefore, the City asserted, the complaint was barred, as Tesoro did not allege it availed itself of those remedies or sought relief by filing an action in administrative mandate under Code of Civil Procedure section 1094.5 as instructed by Municipal Code section 63523.

In opposing the demurrer, Tesoro contended, among other things, it did not have to comply with the Administrative Review Ordinances prior to filing suit because they are preempted by the GCA. On this point, it argued that the GCA fully occupies the field of prescribing the pre-suit claims presentation procedures for actions seeking refund of local tax and, consequently, "local governments, including charter cities like Carson, may not adopt

5

supplementary requirements not imposed by the GCA itself, much less contradictory ones."

The trial court sustained the demurrer with leave to amend. In so doing, the court first "agree[d] with [Tesoro] that [its] refund claims are subject to the GCA[.]" The trial court then rejected Tesoro's preemption argument as unsupported by the caselaw on which it was based. The trial court therefore concluded that, because it did not allege Tesoro's compliance with the Administrative Review Ordinances, or allege circumstances excusing its noncompliance, "[th]e [c]omplaint . . . fails to sufficiently allege that [Tesoro] exhausted [its] administrative remedies before filing suit."

Soon thereafter, Tesoro filed a petition for writ of mandate in this court, and we temporarily stayed the trial court's ruling while the petition was pending. A few months later, we denied the petition for failure to establish entitlement to extraordinary relief and vacated our stay order. Thereafter, Tesoro did not amend its complaint. As a result, the trial court entered judgment in the City's favor.

## DISCUSSION

### I. Standard of Review

"Because the function of a demurrer is to test the sufficiency of a pleading as a matter of law, we apply the de novo standard of review in an appeal following the sustaining of a demurrer without leave to amend." (*California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 247.) "'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable

6

interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

## II.    Analysis

At the outset, we address three preliminary matters. First, for purposes of this appeal, the parties do not dispute that, before filing its complaint in the trial court, Tesoro satisfied the claims presentation procedures set forth in the GCA, but did not comply with the Administrative Review Ordinances. Accordingly, we note Tesoro has forfeited its argument – previously raised in opposition to the City's demurrer – that it complied with both the GCA and Municipal Code section 63515 by mailing its claim for damages to the City Clerk's Office. (*Doe v. California Dept. of Justice* (2009) 173 Cal.App.4th 1095, 1115 ["An appellant . . . forfeits an issue by failing to raise it in his or her opening brief"].)

Next, we clarify the question lying at the heart of this appeal. Given the sprawling arguments presented in the briefs, where both parties dedicate excessive pages to describing and criticizing the cases relied on by the other, it is easy to lose sight of the key question on which this case turns: Was Tesoro required to exhaust the local remedies enumerated in the Administrative Review Ordinances *and* comply with the GCA's claims presentation procedures before filing suit against the City? Tesoro asserts the answer is "no," as the GCA preempts the Administrative Review Ordinances insofar as they are construed as mandatory preconditions to filing suit for refund of local tax payments. The City disagrees.

Third, we identify the general preemption principles applicable in this case. Under article XI, section 7 of the

7

California Constitution, "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." Thus, in general,"'[i]f otherwise valid local legislation conflicts with state law, it is preempted by such law and is void.'" (*Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897 (*Sherwin-Williams*).) "'A conflict exists if the local legislation "'duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication.'"'" (*Ibid.*)

The preemption analysis is more complicated if a charter city has enacted the challenged ordinance because "[u]nder article XI, section 5, subdivision (a) of the California Constitution, a charter city, like [the City], 'gain[s] exemption, *with respect to its municipal affairs*, from the "conflict with general laws" restrictions of' article XI, section 7." (*Sherwin-Williams, supra*, 4 Cal.4th at p. 897, fn. 1, original italics.) Article XI, section 5 grants charter cities what is known as their "'home rule' powers" (see *Johnson v. Bradley* (1992) 4 Cal.4th 389, 397), providing, in relevant part: "It shall be competent in any city charter to provide that the city governed thereunder may make and enforce all ordinance and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws." (Cal. Const., art. XI, § 5, subd. (a).)

Consequently, our Supreme Court has adopted the following analytical framework for evaluating whether a charter city ordinance is preempted by state law: "First, a court must determine whether the city ordinance at issue regulates an activity that can be characterized as a 'municipal affair.' [Citation.] Second, the court 'must satisfy itself that the case

presents an actual conflict between [local and state law].' [Citation.] Third, the court must decide whether the state law addresses a matter of 'statewide concern.' [Citation.] Finally, the court must determine whether the law is 'reasonably related to . . . resolution' of that concern [citation] and 'narrowly tailored' to avoid unnecessary interference in local governance [citation.] 'If . . . the court is persuaded that the subject of the state statute is one of statewide concern and that the statute is reasonably related to its resolution [and not unduly broad in its sweep], then the conflicting charter city measure ceases to be a "municipal affair" pro tanto and the Legislature is not prohibited by article XI, section 5(a), from addressing the statewide dimension by its own tailored enactments.'" (*State Building & Construction Trades Council of California v. City of Vista* (2012) 54 Cal.4th 547, 556.)

We need not apply the four-part framework here, however. In this case, the statute with assertedly preemptive effect is the GCA, which was enacted by the Legislature pursuant to article XI, section 12 of the California Constitution. (*McWilliams v. City of Long Beach* (2013) 56 Cal.4th 613, 627 (*McWilliams*).) That provision authorizes the Legislature to "prescribe procedure for presentation, consideration, and enforcement of claims against counties, cities, their officers, agents, or employees." (Cal. Const. art. XI, § 12.) And our Supreme Court has held "the home rule protections in the Constitution do not limit the Legislature's authority to prescribe procedures governing claims against chartered local government entities." (*McWilliams*, at p. 627.) Therefore, in analyzing whether the GCA preempts the Administrative Review Ordinances, we need only decide whether the former conflicts with the latter. (See *Sherwin-Williams*, *supra*, 4 Cal.4th at p. 897 & fn. 1.) In conducting our analysis, we

9

bear in mind "[t]he party claiming that general state law preempts a local ordinance has the burden of demonstrating preemption." (*Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1149 (*Big Creek Lumber*).)

As noted above, "'[a] conflict exists if the local legislation "'duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication.'"'" (*Sherwin-Williams*, *supra*, 4 Cal.4th at p. 897.) According to Tesoro, "[t]he latter two types of preemption—contradiction and field preemption—are both implicated here." We first consider its field preemption argument.

### A.    Field Preemption

"[W]here the state has fully occupied the field, there is no room for additional requirements by local legislation." (*In re Lane* (1962) 58 Cal.2d 99, 105.) Accordingly, "local regulation is invalid if it attempts to impose additional requirements in a field which is fully occupied by statute." (*Tolman v. Underhill* (1952) 39 Cal.2d 708, 712 (*Tolman*).)

"A local ordinance enters a field fully occupied by state law in either of two situations—when the Legislature 'expressly manifest[s]' its intent to occupy the legal area or when the Legislature 'impliedly' occupies the field." (*O'Connell v. City of Stockton* (2007) 41 Cal.4th 1061, 1068 (*O'Connell*), italics omitted.) Tesoro does not cite – and we could not locate – any GCA provisions showing the Legislature expressly intended to occupy the field of prescribing the procedures a taxpayer must follow before suing for refund of local tax.

We therefore "look to whether it has *impliedly* done so. This occurs in three situations: when "'(1) the subject matter has been so fully and completely covered by general law as to clearly

10

indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the" locality.'" (*O'Connell*, *supra*, 41 Cal.4th at p. 1068, original italics.) In deciding whether a case falls within one of these three circumstances, courts "consider factors including the language and scope of the [statute], the history behind the [statute], and the history of regulation in the area . . . ." (*American Financial Services Assn. v. City of Oakland* (2005) 34 Cal.4th 1239, 1261 (*American Financial*); *Tolman*, *supra*, 39 Cal.2d at p. 712 [Legislature's "intent with regard to occupying the field to the exclusion of all local regulation is not to be measured alone by the language used but by the whole purpose and scope of the legislative scheme"].)

Tesoro does not explain how this case falls within any of the circumstances described above based on the GCA's language, goals, history, and/or structure. (Cf. *Candid Enterprises, Inc. v. Grossmont Union High School Dist.* (1985) 39 Cal.3d 878, 885-888 [concluding respondents persuasively explained how the local legislation in question did not enter an area fully occupied by state law based on the three-part analytical framework set forth above].) Instead, it primarily relies on three cases to support its field preemption argument: (1) *Volkswagen Pacific, Inc. v. City of Los Angeles* (1972) 7 Cal.3d 48 (*Volkswagen*); (2) *McWilliams*, *supra*, 56 Cal.4th 613; and (3) *Sipple v. City of Hayward* (2014)

11

225 Cal.App.4th 349 (*Sipple*). We are not persuaded that these cases dictate the outcome of this appeal.

In *Volkswagen*, the appellants challenged the constitutionality of three ordinances collectively imposing a "'business tax'" on "persons engaged in 'selling any goods, wares, or merchandise at wholesale'" in the City of Los Angeles. (*Volkswagen, supra*, 7 Cal.3d at pp. 51, 54.) Affirming the Court of Appeal's reversal of the judgment entered for the City of Los Angeles, our Supreme Court largely adopted the portions of the Court of Appeal's opinion deeming the tax unconstitutional. (*Id.* at pp. 51-60, 63.) The Supreme Court then noted the action's timeliness may arise on retrial and clarified the applicable statute of limitations to guide the trial court, in the event it exercised its discretion to address the issue. (*Id.* at p. 60.) On this point, the Supreme Court concluded that – whether or not the GCA applied to the appellants' suit for refund for local tax – the case was governed by section 945.6. (*Id.* at pp. 61-63.)

Tesoro relies on a footnote in *Volkswagen*'s statute of limitations discussion. There, the Supreme Court noted that by way of section 935, subdivision (d) and section 912.4[3], the GCA

_____

3    Section 935, subdivision (a) provides that claims exempted from the GCA's coverage, "and which are not governed by any other statutes or regulations expressly relating thereto, shall be governed by the procedure prescribed in any charter, ordinance, or regulation adopted by the local public entity." Per subdivision (d) of this statute, however, "[t]he procedure so prescribed shall not provide a longer time for the board [of the local authority] to take action upon any claim than the time provided in Section 912.4." (§ 935, subd. (d).) Section 912.4, subdivision (a), in turn, requires "[t]he board . . . [to] act on a claim . . . within 45 days after the claim has been presented."

12

prohibits a city charter from extending the 45-day window within which local authorities are statutorily required to respond to a claim for damages presented for their consideration. (*Volkswagen*, *supra*, 7 Cal.3d at p. 62, fn. 7.) The Supreme Court then observed the Los Angeles City Charter afforded its authorities "90 days to act after the claim has been presented." (*Ibid.*) In reconciling these provisions of law, the Supreme Court cited *Eastlick v. City of Los Angeles* (1947) 29 Cal.2d 661 (*Eastlick*)[4] and the Law Revision Commission comment to the 1965 amendment to the GCA to conclude: "The provisions of section 935, subdivision (d), must control, as the filing of claims for money or damages against California government units is an area of statewide concern in which the Legislature has occupied the entire field." (*Volkswagen*, at p. 62, fn. 7.)

Accordingly, the *Volkswagen* court did not consider whether the GCA preempts ordinances requiring taxpayers to exhaust local administrative remedies before suing for a refund of local tax. Instead, in a footnote buried in dicta, the court noted the GCA barred the City of Los Angeles from extending the deadline

---

4      *Eastlick*, *supra*, 29 Cal.2d 661, offers Tesoro little assistance because it was decided before the GCA's enactment in 1959. (See *Ardon v. City of Los Angeles* (2011) 52 Cal.4th 241, 246-247.) In *Eastlick*, our Supreme Court effectively determined the Public Liability Act preempted a provision of the City of Oakland's charter requiring the claims of personal injury victims to itemize their damages and state their total demand. (*Eastlick,* at pp. 666-667.) In so doing, the Supreme Court relied on that specific statute's legislative history to conclude it "occupie[d] the entire field [of regulating the presentation of the claims falling within its coverage] and . . . impliedly preclude[d] control to that extent by municipal or local regulation." (*Id.* at p. 666.)

by which local authorities must act upon a claim. (*Volkswagen*, *supra*, 7 Cal.3d at p. 62, fn. 7.) This determination did not rest on a thorough analysis of the legal principles dictating when a local ordinance is preempted by state law. (See *ibid.*) Thus, we decline to follow *Volkswagen*'s dicta to resolve the issue before us. (See *Smith v. County of Los Angeles* (1989) 214 Cal.App.3d 266, 297 [California Supreme Court's dictum is "not controlling" but "carries persuasive weight and should be followed where it demonstrates a thorough analysis of the issue or reflects compelling logic"].)

Tesoro similarly overstates the impact of the *McWilliams* decision. There, our Supreme Court primarily addressed whether claims for local tax refunds fell within section 905, subdivision (a), and, consequently, were exempt from the GCA's coverage. (*McWilliams*, 56 Cal.4th at p. 618.) Per that statute, the GCA does not apply to "[c]laims under the Revenue and Taxation Code or *other statute* prescribing procedures for the refund . . . of any tax . . . ." (§ 905, subd. (a), italics added.) Analyzing the GCA's language and legislative history, the Supreme Court determined local ordinances and city charter provisions are not "statute[s]" in section 905, subdivision (a)'s purview. (*McWilliams*, at pp. 619-626.) Therefore, it held, the GCA's permission of class actions applied to the appellants' claims for refunds of local taxes. (*Id.* at pp. 616-617, 628-629.)

Thus, *McWilliams* is not a preemption case, as Tesoro contends. Instead, it is a statutory interpretation case, in which the Supreme Court clarified the scope of the GCA's application by discerning the meaning of a particular word used in section 905, subdivision (a). (*McWilliams*, *supra*, 56 Cal.4th at pp. 616-617, 620-626.) Consequently, as in *Volkswagen*, the Supreme Court in

14

*McWilliams* did not address the issue before this court, i.e., whether the Legislature intended to fully occupy the field of prescribing the claims presentation procedures for refund of local tax, and thereby preempt local ordinances requiring exhaustion of administrative remedies. And while Tesoro correctly observes the *McWilliams* court used broad language to frame the issue being decided (*McWilliams*, at pp. 628-629), it is well-settled "[t]he holding of a decision is limited by the facts of the case being decided, notwithstanding the use of overly broad language by the court in stating the issue before it or its holding or in its reasoning." (*McGee v. Superior Court* (1985) 176 Cal.App.3d 221, 226.) Moreover, the *McWilliams* court itself acknowledged: "'"It is axiomatic that cases are not authority for propositions not considered."'" (*McWilliams*, at p. 626.)

For these reasons, we decline to follow the preemption analysis employed in *Sipple, supra,* 225 Cal.App.4th 349. There, the appellate court was tasked with deciding whether the appellant, an Internet service provider, had to comply with local ordinances requiring it to repay its customers the Internet access taxes it had erroneously charged and remitted to local authorities before filing a claim for refund of those taxes on its customers' behalf. (*Sipple*, at pp. 352, 357.) Relying on *McWilliams* – rather than applying the legal principles governing when a local ordinance is preempted by state law – the appellate court held: "To the extent that these 'refund first' ordinances establish a precondition to filing a claim, they are preempted by the [GCA]." (*Sipple*, at p. 357.)

We acknowledge that, in its opening brief, Tesoro touches upon a few of the factors relating to whether the Legislature intended to fully occupy the field of prescribing the procedures a

taxpayer must follow prior to filing suit for refund of local tax. (See *American Financial*, *supra*, 34 Cal.4th at p. 1261.) Specifically, Tesoro points out the "categorical language" used in sections 905 and 935, quotes Code of Civil Procedure section 313, comments on the constitutional authority pursuant to which the Legislature enacted the GCA, and cites a few cases discussing the GCA's purpose. In so doing, however, Tesoro does not explain how these factors apply to place this case in one of the "three situations" identified in *O'Connell*, *supra*, 41 Cal.4th at p. 1068.[5] As an appellate court, "'[i]t is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of [its] correctness.'" (*L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 620.)

In sum, Tesoro bore the burden of demonstrating the Legislature sought to fully occupy the field of prescribing the procedures a taxpayer must follow before suing for refund of local tax, and thereby preempt local ordinances requiring exhaustion of administrative remedies as a precondition to filing suit. (See *Big Creek Lumber*, *supra*, 38 Cal.4th at p. 1149.) For the reasons discussed above, we are not convinced it has done so.

---

5    In its reply brief, Tesoro addresses the policies and purposes underlying the GCA's enactment further, largely in responding to the City's argument touting the "policy interests" that – in its view – are served when taxpayers must exhaust local administrative remedies before seeking relief in court. Like the opening brief, the reply brief fails to apply our Supreme Court's three-part framework governing whether the Legislature has implicitly intended to occupy an area of law. (See *O'Connell*, *supra*, 41 Cal.4th at p. 1068.)

### B.    Contradiction Preemption[6]

Next, Tesoro contends the Administrative Review Ordinances are preempted because they contradict the GCA in multiple respects. This argument was not raised in the trial court, where Tesoro only relied on a theory of field preemption.

""""[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court.' Thus, 'we ignore arguments, authority, and facts not presented and litigated in the trial court. Generally, issues raised for the first time on appeal which were not litigated in the trial court are [forfeited]. [Citations.]'" [Citation.] "Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider. [Citation.] In our adversarial system, each party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack . . . ." [Citation.]'" (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564.) "'It would be manifestly unjust to the opposing parties, unfair to the trial court, and contrary to judicial economy to permit a change of theory on appeal.'" (*Saville v. Sierra College* (2005) 133 Cal.App.4th 857, 873.) Applying these principles, we conclude that because Tesoro did not raise the issue of preemption by contradiction below, it has forfeited this argument on appeal.

---

6      Because the parties originally did not address whether Tesoro forfeited its contradiction preemption argument on appeal, we solicited supplemental briefing on the issue pursuant to section 68081.

17

We are aware that appellate courts may "consider an issue in the first instance [when, as here,] it raises a question of law on undisputed facts . . . ." (*Wisner v. Dignity Health* (2022) 85 Cal.App.5th 35, 44.) "There is no rule, however, that an appellate court *must* consider a pure question of law raised for the first time on appeal. Instead, the decision to do so or not 'is largely a question of the appellate court's discretion.'" (*Souza v. Westlands Water Dist.* (2006) 135 Cal.App.4th 879, 898-899, original italics.) Mindful that "our Supreme Court has cautioned . . . such discretion should be exercised rarely," we decline to do so here. (*Wisner v. Dignity Health*, at p. 44.)

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, P. J.

We concur:

COLLINS, J.

ZUKIN, J.

18